GLANCY BINKOW & GOLDBERG LLP
MARC L. GODINO (#182689)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVAVANI CONROY, Individually and On Behalf of All Others Similarly Situated, | Case No. **CV10-05260** MMM (Ex) |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| DISCOVER FINANCIAL SERVICES; DISCOVER BANK , | **JURY TRIAL DEMANDED** |
| Defendants. | |

COPY

CLASS ACTION COMPLAINT

Plaintiff, Devavani Conroy ("Plaintiff" or "Conroy"), individually and on behalf of all other persons similarly situated as defined below, brings this action against Defendants, Discover Bank and Discover Financial Services (referred to herein collectively as "Discover" or "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This is a proposed or putative class action brought on behalf of a class of California residents who (1) were marketed by Discover to purchase and maintain "Payment Protection" coverage for their credit card account balances and (2) paid for Discover "Payment Protection" coverage (the "Class").

2.     Discover markets and sells its "Payment Protection" program ("Payment Protection" or the "Program") as a product that will provide benefits to cardholders if certain events occur, such as unemployment or disability.  Discover charges the cardholders $.89 per hundred dollars of their monthly account ending balance, and in return tells the cardholder that it will defer minimum payments on account balances for a period of time when the cardholder is unemployed or disabled.  These promises are illusory.

3.     Discover sells Payment Protection through misleading statements, incomplete statements and misrepresentations. . The product is sold through print ads and direct telemarketing to existing cardholders who are generally in the "subprime" credit category.

4.      Discover manipulates the Payment Protection sales process by either 1) enrolling cardholders in Payment Protection without advance notice or consent by the cardholder, and 2) misrepresenting to cardholders that Payment Protection will "Preserve your lifestyle – and protect your Discover Card payment history – when life's events disrupts your finances" by putting their account on hold during the benefit period.

5.      At the time of sale, Discover does not ask the cardholder any qualifying questions to determine if the cardholder is eligible for Payment Protection benefits, or to determine if the cardholder will ever be eligible for Payment Protection benefits.  There is a lengthy list of exclusions or grounds for denial of benefits that are not disclosed to the cardholder, not revealed to the cardholder until a claim for benefits is submitted, and provides Discover with ultimate and unchallengeable discretionary power to deny benefits if it "determines that [the cardholder] do[es] not qualify for benefits *for any reason*." (emphasis added) .  Discover will not disclose the terms of Payment Protection until after the consumer accepts or is charged for the product.

6.      The Payment Protection claims process is so difficult, onerous and discretionary that, on information and belief, only 3-5% of premiums paid by cardholders are ever paid out as benefits.  Cardholders who are denied benefits do not receive refunds of premiums paid.  They have therefore paid Discover for a

product that is entirely worthless to them.   Cardholders are rarely able to overcome the multiple bureaucratic hurdles and incomprehensible and contradictory preconditions that are confusing and that were not disclosed to the cardholder at the time of sale (or imposition of charges).   When Discovery's discretionary process results in the ultimate denial of claims, there is no objective process for a cardholder to appeal Discover's decision.

7.     Payment Protection is a "mass" marketed product, that is, the marketing, management and claims handling processes are applied in a uniform manner so that all members of the proposed class were marketed in a virtually identical manner and members of the class received standardized responses from Discover in response to claims for benefits.

8.     Discover's sales materials tell cardholders that they will give cardholders "the time [they] need to get back on your feet" because "[t]here are no payments, no periodic finance charges, no late fees, no overlimit fees, and no Payment Protection fees" when a triggering event, such as unemployment or disability occurs.   Discover, in its marketing material, tells cardholders that, should the need arise, "One call puts Payment Protection to work…When you need us, simply call… and a thoughtful, knowledgeable Payment Protection specialist will take the time to activate your benefits."   Discover's statements are misleading because thousands of cardholders had a similar experience to the

Plaintiff here, a woman who lost her job and asked for benefit payments or coverage under the Program, and who was not given ""time to get back on [her] feet", but instead was denied "Payment Protection" coverage despite having paid for it.

9.      In order to increase profits, Discover manipulates the claims payment process in its favor by limiting the chances of having to honor or pay Payment Protection claims.   Discover relies upon a deceptive practice known as "post claims underwriting" to accomplish this strategy.   This is the practice of asking few or no questions of the cardholder at the time of sale to determine if the customer is likely to qualify for benefits should the need arise.   When the customer attempts to use the "benefits" of Payment Protection, Discover denies the benefits for reasons that were not disclosed at the time of sale.   For example, numerous retired senior citizens are charged for Payment Protection even though they are excluded from receiving unemployment benefits.

10.      As a result of Discover's deceptive and unfair marketing schemes and claims practices, plaintiff and class members purchase a product that is virtually worthless to them, and are charged excessively for the product even if one assumes that product has some value to the cardholder.   The ratio of premiums charged is excessive when compared to the actual value of claims paid.

## **JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under the constitution or laws of the United States and §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the Class members and Defendants are citizens of different states.

12.     Substantial acts which give rise to the causes of action asserted herein occurred within this State and this judicial district.

13.     Venue is proper in this Court because Plaintiff resides in this District, and many of the proposed Class members are residents of this District. Pursuant to 28 U.S.C. §1391(c), Discover is deemed to reside in this District because it is subject to personal jurisdiction in this District and because Discover has continuous and systematic contacts with this State by issuing credit cards, offering credit card products such as Payment Protection, and because Discover sends monthly statements and sells products and services in California to residents of this District.

14.     To the extent there is any contractual or other impediment to pursuit of these claims on a class action basis, Plaintiff specifically alleges, and will prove, if necessary, that any bar to class action proceedings is unconscionable, unfair and against public policy.

## PARTIES

15.     Plaintiff, Devavani Conroy, is a resident of the State of California residing in Los Angeles, California.  Plaintiff received a credit card from Discover that purported to provide Payment Protection features and benefits, and Plaintiff was charged for and paid for these features.

16.     Defendant, Discover Financial Services, is a bank which has its principal place of business in Riverwoods, Illinois.

17.     Defendant, Discover Bank is a bank which has its principal place of business in Greenwood, Delaware.

18.     At all times herein mentioned, Defendants, and each of them, were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other co-Defendant.

## UNFAIR AND UNLAWFUL CONDUCT OF DISCOVER: DISCOVER'S PAYMENT PROTECTION PROGRAM

19.     Discover markets a product that it calls the Payment Protection Program as a service that will safeguard consumer's credit "when [they] need help the most".  Discover represents that it will defer monthly payments for up to two

years when the cardholder suffers a "hardship event" such as job loss, leave of absence, disability or hospitalization.

20.     In addition, there is a "credit life" feature to this product.  Discover represents that it will cancel the cardholder's balance up to $25,000 in the event of death or long-term disability.   Upon information and belief, as part of the Program, Discover imposed charges for the credit life feature on each California consumer, even though Discover failed to obtain specific, affirmative written indication of his or her desire to receive the service after disclosure of the cost as required by the Truth in Lending Act §1605(b).

21.     Discover charges $.89 per $100 of the balance shown on cardholders billing statement for the previous billing period for Payment Protection.

**A.  Discover Misrepresents Payment Protection Eligibility Requirements**

22.     As part of its scheme to maximize the number of participants in the Program and reap the extraordinary fees it collects from those participants, Discover either unilaterally imposes the Payment Protection feature on the consumer's credit card and requires the consumer to take action to cancel Payment Protection or provides Payment Protection to consumers through direct marketing and acceptance by the consumer of the product.

23.     In the latter situation, Discover misrepresents that cardholders who enroll in the Program will be protected if they experience one of the covered

events.  For example, in November, 2009 Discover made oral representations to plaintiff to "enroll" her in Payment Protection that are similar in substance to the following excerpts from Discover's website:

**Payment Protection:**

Freeze card payments for up to two years.

\*\*\*

## Payment Protection

Put your payments on hold when the unexpected happens

**Discover Payment Protection can help take the sting out of unexpected events.**

When you need help the most, Discover Payment Protection will be at your side.  Payment Protection will help safeguard your account payment history by putting your account on hold during the benefit period (durations vary by product) if you experience a covered hardship such as disability, hospitalization or one of the other covered events.

Plus, you can also put your payments on hold for one month when you're celebrating one of life's happy events, like moving  to a new home.

With Payment Protection both you and your account payment history are protected so you can focus on more important things.

**Powerful benefits to give you peace of mind.**

- Put your payments on hold during the benefit period.
- Pay no periodic interest charges or late fees during the benefit period.
- In the event of your death, cancel your balance (limits vary based on product)*

* Not available in AK, IA, MT, NV, OR, WI, TN, RI, WA, PR, GU or VI

24.     The statements made by Discover when "enrolling" plaintiff and class members were likely to deceive cardholders because the statements gave the impression that whenever enrolled cardholders inform Discover that they have experienced one of the events described by Discover, they will receive the Program's benefits.  However, enrolling in the Program will not, for example, cause Discover to "Freeze card payments for up to two years."  In fact, Plaintiff lost her job, and even though she paid over $45 per month for benefits and reported her job loss to Discover, she was denied benefits.

25.     Discover reiterates the same message that it provides cardholders when soliciting them in a letter it sends to cardholders, including Plaintiff, several weeks after Discover solicits and "enrolls" the cardholder into the Program (the "Post-enrollment Letter").  Discover states:

> Now that you or an authorized user on your Account have enrolled in Discover Payment Protection, you have what it takes to preserve your lifestyle – and protect your Discover Card payment history – when life events disrupt your finances.
>
> **Take the time you need to get back on your feet.**
> Payment Protection puts your Discover Card payments on hold for up to two years when you, your joint cardmember, your spouse or domestic partner, any authorized user on the account, or the highest wage earner in your household experiences one of the qualifying Hardship Events.  There are no payments, no periodic finance charges, no late fees, no overlimit fees, and no Payment Protection fees while you're receiving benefits.  Provided your request is in good standing, you can also request to use up to $1,500 of your available Discover Card credit line to purchases while you're receiving benefits.

26.     In addition, the Post enrollment Letter represents in bold and prominently displayed in bullet point fashion:

**Benefit Summary**

**Hardship Events**
**(Payments on hold for up to two years)**

- **Hospitalization**
- **Disability**
- **Involuntary unemployment**
- **Leave of absence**
- **Hospitalization**
- **Federal or state disaster**
- **Death of a child, spouse or domestic partner**

27.     The statements in paragraphs 26-27 (both separately and in combination with the statements made in paragraph 24) are likely to deceive cardholders by giving them the impression that because they "enrolled in Discover Payment Protection", their payments will be "put on hold for up to two years" if they experience a "Hardship Event" and there would be "no payments, no periodic finance charges, no late fees, no overlimit fees, and no Payment Protection fees while you're receiving benefits."  However, cardholders' accounts are **not** "put on hold" and protected  based on their "enrollment" in the Program.  In fact, Plaintiff lost her job, and even though she paid over $45 per month for benefits and reported her job loss to Discover, she was denied benefits.

28.     Discover also misrepresents that the claims process is simple and a mere formality in obtaining the Program's benefits.   For example, in the Post-Enrollment Letter, Discover claims:

**One Call Puts Payment Protection to Work**:

When you need us, simply call 1-877-883-1959 and a thoughtful,

knowledgeable Payment Protection specialist will take the time to

activate your benefits.

29.     The statement in paragraph 29 (individually and in combination with statements in paragraphs 24, 26-27) are misleading because they wrongly imply that activating benefits is a formality that can be accomplished by making "one call" to Discover.   In fact, as described in more detail below, the process is onerous and Discover demands a great deal of documentation.   Moreover, on information and belief, Discover makes the process very difficult, requiring cardholders to call multiple times to get necessary information and forms that it requires before it will pay claims.   Ultimately, on information and belief, Discover denies the vast majority of claims, paying out an insignificant amount of the fees charged.

30.     Had Plaintiff known the truth about the product she would not have "enrolled" in the program.

31.     Upon information and belief, the documents and telephone solicitations provided to Plaintiff and class members are standard form documents and based on standard scripts and were provided in substantially the same form or format to all consumers in California who received the Payment Protection from Discover.

32.     Upon information and belief, Plaintiff's experience with Discover's marketing of Payment Protection and the experience with paying for Payment Protection is the result of Discover's standard business practices and are typical of the experiences of all Class members who paid for and received the Payment Protection product.

**B.     After Enrolling As Many Cardholders as Possible in the Program Through Deceptive Marketing, Discover Unfairly Limits the Chances of Having to Honor or Pay Payment Protection Claims**

33.     Discover does not deliver on the coverage it represents in the materials cited above because it engages in the deceptive practice known as "post claims underwriting" and because cardholders often fail to overcome the bureaucratic hurdles that Discover imposes in order to manipulate the process in its favor.

34.     "Post claim underwriting" is the practice of asking few or no questions of the cardholder at the time of sale to determine if the customer is qualified for the product, then when the customer attempts to use the "benefits" of

Payment Protection, denies the benefits for a reason related to age, employment status, physical condition, or one of the many other reasons for denial.

35.     During the telemarketing sales call and at the time of sale, Discover does not ask the cardholder a single question to determine if Payment Protection is appropriate for the customer.   For example, Discover does not ask for the cardholder's employment status even though employment status is a reason Discover denies claims.   For example, on information and belief, when cardholders make claims, Discover will ask cardholders if they are retired, were contract workers or self-employed.   If a cardholder answers affirmatively to any of these questions regarding job status, Discover will deny job loss benefits.  Yet, Discover does not ask any of these questions when cardholders enroll in the Program – even though Discover will deny their claim based on job status at the time of enrollment -- because they want to collect fees from as many persons as possible, knowing that such persons likely lack the resources to challenge Discover's denial of claims.

36.     In other words, this product is sold to consumers without any consideration for the circumstances of the consumer or any reasonable investigation into facts that may cause the product to be worthless to the consumer.   For instance, on information and belief, retired senior citizens are charged for this product, although it would be nearly impossible for them to *ever*

receive benefits under Payment Protection for job loss, leave of absence, or disability should they become seriously ill and unable to make credit card payments.

37.     Discover also refuses to pay promised benefits, claiming that enrolled cardholders do not satisfy the procedures that are contained in prolix documents that can only be obtained by cardholders **after** they have enrolled in Payment Protection.  These documents are written in fine print and are meaningless and incomprehensible to the average consumer.

38.     For example, Discover can and does deny job loss benefits to cardholders, who had paid for Payment Protection, and fail to do any one of the following:

- qualify for state unemployment benefits;

- register and remain registered for work at a recognized employment agency following the job loss;

- provide Discover with proof of registration at a recognized employment agency;

- establish that you were not unemployed at the time you enrolled in Payment Protection;

- establish that the unemployment was not caused by disability caused by sickness, illness, disease, accident or pregnancy or the result of the resignation, retirement or the end of an employment contract;

- notify Discover of the job loss within whatever time period Discover unilaterally determines is a "reasonable time";

- establish that unemployment has lasted for at least 15 days prior to making a claim; and

- if self employed, establish with documentation that the business location has suffered: (a) property or inventory damage, (b) a business closure for at least five days due to fire or flood or (c) the initiation of a lawsuit in connection with the business.

39.    Similarly, Discover can and does deny disability benefits to cardholders, who had paid for Payment Protection, and fail to do any one of the following:

- notify Discover of the job loss within whatever time period Discover unilaterally determines is a "reasonable time";

- establish that disability has lasted at least 15 days;

- Demonstrate that he suffers an accident or illness that prevents him from performing the material and substantial duties of the job or, if

retired or unemployed, that would prevent him from performing the normal material and substantial activities for a person of the same age;

- Remain under the continuous treatment" of physician ;

- Obtain verification from physician of continuous care and disability;

- Establish that accident or illness is not caused by childbirth or pregnancy;

- Establish that accident or illness is not caused by pre-existing conditions that were known or anticipated at the time of enrollment in Payment Protection; and

- Provide proof of permanent disability from a doctor within 180 days after short-term disability ends.

40.     Discover denies other "Harship Benefits" for reasons that are never disclosed when cardholders enroll and are contrary to their uniform sales and marketing materials and presentations.  For example, "Leave of Absence" benefits are not available to the self-employed and the "Hospitalization" benefit will not apply to hospitalization for conditions that pre-existed prior to enrollment in the Program (even though Discover never asks for such conditions at the time of enrollment).

41.     Further, when claims for Payment Protection benefits are denied, Defendants have not implemented a process through which subscribers' Payment

Protection premiums are refunded, even if the subscribers are deemed *per se* ineligible for Payment Protection benefits.   In fact, if subscribers are denied Payment Protection benefits, Defendants neither affirmatively removes subscribers from Payment Protection enrollment going forward, nor is it Defendants policy to inform subscribers of their continued obligation to pay for Payment Protection even though they have been deemed to be ineligible for benefits.

42.   Defendants also claim that they can change the Payment Protection terms and fees at any time.

### C.   Plaintiff and Class Members Paid Unconscionable Fees for the Program

43.   Discover charged Plaintiff and Class members unconscionable fees for the Program.   The Program was completely worthless to Plaintiff and class members who paid for protection, but were denied benefits.

44.   Moreover, Discover has charged all Class members unconscionable fees, whether or not they have submitted a claim for Payment Protection.   The amount of fees collected by Discover from Plaintiff and Class members, at a rate of $.89 per $100, is unconscionable and shocks the conscience because of the extreme infrequency with which it pays class members claims.

45.   On information and belief, Discover has collected hundreds of millions of dollars from Class members.   Yet, on information and belief, the

expected "loss ratio" for the debt suspension agreements offered by credit card issuers is generally in the 3% to 5% range.  This means that credit card companies pay out only 3-5% of the money they receive to cover claims.  The remaining 95-97% goes to the corporate coffers.  Actual ratios of benefits in relation to fees paid by consumers are likely even lower because Discover cardholders are restricted from using their card if a borrower were to receive benefits for loss of job or disability.  Thus, many consumers will forego the debt suspension benefit once they recognize they will lose the use of the card if they do so. Given that benefits are triggered by events that impair a borrower's income, it is during these times that the borrower is in greater need of borrowing capacity.

46.     In contrast, loss ratios in the model rule proposed by the National Association of Insurance Commissioners for credit insurance, which pays the premiums for cardholders when they submit a claim (and itself has been criticized as being of limited value to cardholders), is 60% and most states have loss ratios of 50-60%.  If credit insurance companies of credit card companies do not pay out the specific amount in claims, they must refund the excess premiums to the policyholders and lower premiums on a going forward basis in order to meet loss ratio requirements.

47.     This skewed ratio for Discover's payout from Payment Protection claims is a direct result of Discover's scheme.   Because of its deceptive

marketing, Discover attracts a high number of people that pay $.89 per $100, resulting in, on information and belief, hundreds of millions of dollars being paid in to Discover. However, Discover pays out a low number of claims because of manipulation of the claims process through negative underwriting and procedural loopholes.

48. When, consistent with Discover's scheme to charge as much as possible and pay out as little as possible, Discover uses its unfettered discretion to deny claims, there is no objective process provided to appeal Discover's ultimate denial.

49. The Program also provides the added benefit to Defendants of lowering available credit to its subscribers through the imposition of this additional fee. Further, the imposition of the fee creates a cycle of profitability for Defendants, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

## FACTS AS TO PLAINTIFF DEVAVANI CONROY

50. Plaintiff "enrolled" in Discover's Payment Protection beginning in November, 2009.

51. As indicated above, Discover solicited Plaintiff by phone and several weeks later sent her the Post-Enrollment Letter and a prolix and confusing document setting out various additional terms of the Program.

52.     Plaintiff was laid off from her job and attempted to take advantage of the "benefits" provided by Payment Protection.  When Plaintiff called Discover in April 2010, she was "denied" the benefits for which she had been paying over $45 per month.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action on her own behalf and on behalf of a Class of all other persons similarly situated, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure.

54.     Plaintiff seeks certification of a Class of California consumers targeted by Discover as part of its Payment Protection sales, billing, and marketing schemes, and who paid for Payment Protection.

55.     Excluded from the proposed Class are Defendants and any person, firm, trust, corporation or other entity related to or affiliated with Defendants, as well as the Judge(s) assigned to this case.  On information and belief, the Class is composed of at least tens of thousands of persons who were Discover customers, the joinder of which in one action would be impracticable.

56.     The disposition of the claims of the proposed Class members through this class action will benefit both the parties and the Court.  The identities of individual members of the Class are readily ascertainable through the Defendants' billing records.

57.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a) Whether the Defendants' sales, billing and marketing scheme as alleged herein is fraudulent, deceptive, unlawful and/or unfair in violation of UCL and Consumer Legal Remedies Act ("CLRA");

b) Whether Discover's common and uniform sales, billing and marketing scheme related to the Payment Protection product as alleged herein constitutes a  deceptive trade practice as defined by California statutes;

c) Whether Plaintiff and the Class members are entitled to restitution of all amounts wrongfully acquired by Defendants through their common and uniform scheme;

d) Whether Plaintiff and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Discover;

e) Whether Plaintiff and the Class members are entitled to prospective injunctive relief enjoining Discover from continuing

to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein;

f) Whether Plaintiff and the Class members are entitled to recover compensatory and punitive damages as a result of the Defendants' wrongful scheme; and

g) Whether the Defendants' practices violate TILA, 15 U.S.C. §1601, *et seq.*

58.    Plaintiff asserts claims that are typical of the Class, having all been targeted by Discover as consumers who were improperly assessed charges for Payment Protection. Plaintiff and the Class members have similarly suffered harm arising from Defendants' violations of the law as alleged herein.

59.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests are not antagonistic to those of the Class members. Plaintiff has retained counsel competent and experienced in the prosecution of class litigation.

60.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims. Plaintiff and members of the Class have suffered irreparable harm as a result of Defendants'

fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent the class action, Class members will continue to suffer losses, the violations of the law described herein will continue without remedy, and Defendants will be permitted to retain the proceeds of their misdeeds.  Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

## PROPOSED CLASS DEFINITION

61. Plaintiff seeks certification of a Class defined as California citizens and consumers who (1) were marketed by Discover to purchase and maintain "Payment Protection" coverage for their credit card account balances and (2) paid for Discover "Payment Protection" coverage.

## FIRST CAUSE OF ACTION
### (Violation of Business & Professions Code §§17200, *et seq.*)

62. Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs, and further alleges as follows.

63. Plaintiff asserts this cause of action on behalf of herself and those similarly situated residing within the State of California.

64. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

California Business & Professions Code §17200, *et seq.* The Act also provides for injunctive relief and restitution for violations.

65. Defendants' misleading marketing scheme related to Payment Protection violated the Consumer Legal Remedies Act and the Truth in Lending Act and is therefore unlawful pursuant to California Business & Professions Code §17200, *et seq.*

66. Defendant's deceptive marketing scheme related to the Payment Protection product constitutes unfair practices within the meaning of California Business & Professions Code §17200, *et seq.*

67. Moreover, Defendants' Payment Protection policies and practices are substantively and procedurally unconscionable in the following material respects, among others:

a. Defendants do not disclose to cardholders the terms of Payment Protection coverage and restrictions until after the sale of the product, and the additional materials that are provided to the cardholders are misleading, incomplete, and difficult to read and comprehend, leaving cardholders with inadequate information to evaluate the costs and benefits of the product.

b. Defendants do not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited

to retired, unemployed, employed by family members, persons employed on a part-time or seasonal basis;

c.  the amount charged in fees for the Payment Protection service is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernable by subscribers;

d. the written documents Defendants eventually provide to subscribers are contracts of adhesion in that they are standardized forms, imposed and drafted by Defendants, who are parties of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety.

68.  By engaging in the above described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of California Business & Professions Code §17200, *et seq.*

69.  Defendants' acts and practices as described herein have deceived and/or are likely to deceive members of the consuming public.

70.  As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Plaintiff and members of the proposed Class.  Specifically, Defendants have been unjustly enriched by the profits from California consumers who pay for the Payment Protection.

71.   Pursuant to California Business & Professions Code §§17203, Plaintiff seeks an order of this Court for Defendants to fully disclose the true nature of its misrepresentations.  Plaintiff additionally requests an order requiring Defendants to disgorge their ill-gotten gains and award Plaintiff full restitution of all monies wrongfully acquired by Defendants by means of such acts of unfair competition, plus interest and attorneys' fees so as to restore any and all monies to Plaintiff and members of the proposed Class which were acquired and obtained by means of such unfair competition, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendants.  Plaintiff and members of the proposed Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

72.   Defendants, through their acts of unlawful and unfair competition, have acquired money from Plaintiff and the members of the proposed Class.  Thus, Plaintiff and the members of the proposed Class request that this Court restore this money to them, and enjoin Defendants from continuing to violate California Business & Professions Code §17200, *et seq.*, as discussed above.

73.   Such conduct is ongoing and continues to this date.  Plaintiff and the proposed Class members are therefore entitled to the relief described below.

74.   Plaintiff seeks reasonable attorneys' fees pursuant to, *inter alia*, Code of Civil Procedure, §1021.5

## SECOND CAUSE OF ACTION
**(Consumer Legal Remedies Act, California Civil Code §1750 *et seq*.)**

75.     Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs, and further alleges as follows.

76.     At all relevant times, Plaintiff was each a "consumer," as that term is defined in Civ. Code § 1761(d).

77.     At all relevant times, Payment Protection constituted "services," as that term is defined in Civ. Code § 1761(a).

78.     At all relevant times, defendants were "persons," as that term is defined in Civ. Code §1761(c).

79.     At all relevant times, Plaintiff's purchase of Payment Protection constituted a "transaction," as that term is defined in Civ. Code § 1761(e).

80.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Payment Protection service to consumers.  By offering the Payment Protection service to the public, Defendants made misrepresentations about Payment Protection and withheld material terms from consumers prior to activation of Payment Protection charges, including the limitations, restrictions and exclusions associated with the service.

81.     Defendants' practices, acts, policies, and course of conduct violated the California Consumer Legal Remedies Act, California Civil Code §1750 *et seq*.,

(the "CLRA"), in that Defendants represented that their services had uses and benefits which they do not have, in violation of §1770(a) (5) of the CLRA.

82.   Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants represented that their services were of a particular standard, quality, or grade, when they were of another,    in    violation    of §1770(a)(7) of the CLRA.

83.   Defendants' practices, acts, policies, and course of conduct violated the CLRA in that Defendants advertised their services with intent not to sell them as advertised in violation of §1770(a)(9) of the CLRA.

84.   Plaintiff seeks restitution of all monies received by Defendants as a result of sales of Payment Protection as provided in California Civil Code §1780. Plaintiff is informed and believes that the amount of said restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial when the same has been ascertained.

85.   Plaintiff seeks injunctive relief for the CLRA claims alleged in this Complaint. Plaintiff's counsel has served on Defendants, contemporaneously with the filing of this Complaint, a CLRA notice letter in accordance with California Civil Code §1782(a).   Plaintiff will amend this Complaint to assert claims for additional relief under the CLRA in the event Defendants do not rectify these issues within the appropriate time period outlined in the CLRA.

# THIRD CAUSE OF ACTION
## (Unjust Enrichment)

86.   Plaintiff restates and realleges the preceding paragraphs of the Complaint as though fully set out here.

87.   In seeking to sell credit cards to Plaintiff and members of putative Class, Defendants withheld material terms from consumers prior to activation of Payment Protection charges, including the numerous limitations, restrictions and exclusions associated with the product.

88.   Defendants were unjustly enriched by the practice of withholding material terms of Payment Protection until after the service was charged to the consumer's credit card.

89.   Defendants were unjustly enriched by their practices of making it so difficult for consumers to actually receive payment for Payment Protection, or cancel it, that the service was rendered worthless.   Such acts were, and are, unconscionable.

90.   Defendants were unjustly enriched by charging Plaintiff and Class members for illusory benefits.

91.   Defendants were unjustly enriched by charging Plaintiff and Class members who were unable by the terms of Payment Protection service, to collect their benefits.

92.   As a result of Defendants' actions, which constitute unjust enrichment, Plaintiff and Class members suffered actual damages, for which Defendants are liable.   Defendants' liability for such damages should be measured by the extent of Defendants' unjust enrichment.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.   An order certifying that the action may be maintained as a class action as defined wherein;

B.   A temporary, preliminary and/or permanent order:

1.   Enjoining Defendants from pursuing the policies, acts and practices complained of herein;

2.   Enjoining the above-described wrongful acts and practices of Defendants; and

3.   Providing restitution to all consumers who improperly incurred charges and/or expenses, as a result of Defendants' wrongdoing.

C.   An order requiring disgorgement of Defendants' ill-gotten gains, paying of restitution to Plaintiff and all members of the proposed Class, and to restoring all funds acquired by means of any act or practice declared by this

1    Court to be an unlawful, fraudulent or unfair business act or practice, a violation

2    of laws, statutes or regulations, or constituting unfair competition;

3
         D.     For distribution of any moneys recovered on behalf of members of
4
5    the proposed Class, via fluid recovery or cy pres recovery where necessary to

6    prevent Defendants from retaining the benefits of its wrongful conduct;

7
         E.     Reasonable attorneys' fees pursuant to, *inter alia*, Code of Civil
8
9    Procedure, §1021.5;

10
         F.     Costs of this lawsuit;
11
12       G.     Pre- and post-judgment interest; and

13
         H.     Such other and further relief as the Court may deem necessary or
14
15   appropriate.

16                        **DEMAND FOR JURY TRIAL**

17
         Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs
18
19   demand a jury trial as to all issues triable by a jury.

20
21   DATED:  July 16, 2010              Respectfully submitted,

22                                      GLANCY BINKOW & GOLDBERG LLP

23

24                                      _____
                                        Marc L. Godino (#182689)
25                                      Lionel Z. Glancy (#134180)
26                                      1801 Avenue of the Stars, Suite 311
                                        Los Angeles, CA 90067
27                                      Telephone:  (310) 201-9150
                                        Facsimile:  (310) 201-9160
28
                                        Email:  info@glancylaw.com

                        CLASS ACTION COMPLAINT
                                   31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brett Cebulash
Kevin Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: 212.931.0704
Email:  bcebulash@tcllaw.com
        klandau@tcllaw.com

Brian Murray
MURRAY, FRANK & SAILER, LLP
275 Madison Ave., Suite 801
New York, New York 10016
Telephone: 212-682-1818
Email: bmurray@murrayfrank.com

Steve Owings
OWINGS LAW FIRM
1320 "D" Brookwood Dr.
Littlerock, AR 72202
Telephone: (501) 661-9999

T. Brent Walker
Carter Walker, PLLC
2171 West Main, Suite 200
P.O. Box 628
Cabot, AR 72023
Tel: 501-605-1346
Fax: 501-605-1348

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 5260 MMM (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Glancy Binkow & Goldberg LLP
Marc L. Godino (182689)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
(310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DEVAVANI CONROY, Individually and On Behalf of All Others Similarly Situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | **CV10-05260** *mmm* (Ex) |
| DISCOVER FINANCIAL SERVICES; DISCOVER BANK, | **SUMMONS** |
| DEFENDANT(S). | |

TO:    DEFENDANT(S): <u>ABOVE-NAMED DEFENDANTS</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Glancy Binkow & Goldberg LLP_____, whose address is _1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___**16 JUL 2010**___

By: _____

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**COPY**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DEVAVANI CONROY | DISCOVER FINANCIAL SERVICES, DISCOVER BANK |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Glancy Binkow & Goldberg LLP<br>1801 Avenue of the Stars, Suite 311<br>Los Angeles, CA 90067 (310) 201-9150 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1331, 1332(d)(2), Business & Professions Code 17200, Consumer Legal Remedies Act, Cal. Civil Code 1750

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☑ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Discovery Financial Services:  Illinois<br>Discover Bank:  Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  July 16, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |